UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL ORR, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-1067-RLM-MGG |
| CARTER, et al., | |
| Defendants. | |

OPINION AND ORDER

Michael Orr, a prisoner without a lawyer, filed a complaint (ECF 14)[1] against fourteen separate defendants because he believes the mental health care he received while incarcerated at the Westville Correctional Facility was inadequate and that officers used excessive force against him, which led to a mental breakdown. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Orr arrived at Westville Correctional Facility on October 6, 2017. He suffers from psychiatric disorders and was diagnosed before 2015 with post-traumatic stress disorder (PTSD), depression, panic disorder with agoraphobia, and

---

[1] Mr. Orr initially filed an unsigned complaint. ECF 1. The court gave him leave to file a signed complaint, but dismissed the case when he didn't file it by the deadline. ECF 3; ECF 7; ECF 9. After the case was dismissed, Mr. Orr indicated that he submitted his signed complaint to the law library for filing prior to the deadline and only learned that it wasn't filed when his case was dismissed. ECF 12. The court reopened the case in the interest of justice. ECF 13.

dysthymia. In 2015, he was instead diagnosed with generalized anxiety disorder, anti-social personality disorder, and narcissistic personality disorder. Mr. Orr has been housed in segregation or in segregation-like units since the change in diagnoses.

On October 9, 2017, Mr. Orr saw Michelle Boren, a licensed mental health professional. Mr. Orr told Ms. Boren about his history of being stabbed, extracted from cells, and assaulted by staff. He also told her that he was suffering from nightmares, depression, and trouble sleeping. He indicated that he was "living in fear of (his own) impulsive reactions to violence and that it affects his anxiety." ECF 14 at 5. Ms. Boren made an entry in Mr. Orr's electronic medical record that wasn't disclosed to Mr. Orr. To the extent that Mr. Orr might be claiming that he had a right to view each note in his electronic medical record, no such right arises from the Constitution, so he can't proceed against Michelle Boren on these allegations.

Mr. Orr saw Dr. Gary Durak on October 12, 2017. He shared the same information with Dr. Durak that he shared with Ms. Boren. He also mentioned that he had racing thoughts, hypertension, and worsening headaches. They discussed his prior suicide attempts and his history of filing lawsuits, including a lawsuit against mental health workers alleging that they intentionally re-diagnosed his PTSD, depression, and panic disorders in 2015 so that he could be isolated in segregation. Dr. Durak's notes in the electronic record indicate that Mr. Orr over-dosed on drugs during a suicide attempt and that he didn't report any symptoms of PTSD. Mr. Orr alleges that these statements, among others, are false. The electronic record entry further indicates that Dr. Durak diagnosed Mr. Orr with major depression, without

2

daily functional impairments. Again, the electronic record entry wasn't disclosed to Mr. Orr. Mr. Orr alleges that Dr. Durak intentionally downplayed his symptoms and misdiagnosed him "because of his behavior and segregation status." ECF 14 at 6.

Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008).

Mr. Orr alleges that Dr. Durak knowingly falsified his medical records or intentionally misdiagnosed him to punish him "because of his behavior and segregation status" (ECF 14 at 6) and not because his statements and diagnosis were the result of an exercise of medical judgment. Even when these allegations are accepted as true, they don't state a claim upon which relief can be granted because Mr. Orr doesn't explain how Dr. Durak's misstatements or misdiagnosis on October 12, 2017, resulted in constitutionally inadequate medical care.

On October 23, 2017, Correctional Officer Canzoneri allegedly pulled on Mr. Orr's elbow, which was injured, and pushed Mr. Orr against a wall while Correctional Officer James Early sprayed pepper spray in Mr. Orr's face, all without need or justification. In Mr. Orr's words, this "caused [him] to have an out of body experience (mental breakdown) and he attacked Early and Canzoneri." ECF 14 at 6. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." Hendrickson v. Cooper, 589 F.3d 887, 890 (7th Cir. 2009). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* The evidence migh ultimately show that the use of force was justified, but giving Mr. Orr the inferences he is entitled to at this stage of the litigation, he has stated a claim against Correctional Officer Canzoneri and Correctional Officer Early.

Mr. Orr believes that Ms. Boren should have examined him face-to-face after this incident to determine whether his mental health issues caused the incident.

4

Even after Mr. Orr submitted a health care request form on October 29, 2017, indicating he was concerned about his impulsive reactions, anger, panic, nightmares, flashbacks, sleeping problems, and difficulty eating, Ms. Boren didn't perform a face-to-face assessment. He was charged with a conduct violation and ultimately found guilty. Mr. Orr further alleges that Ms. Boren failed to assess him not because she was exercising her medical judgment but instead to punish him. It can't be plausibly inferred from these allegations that a face-to-face evaluation of Mr. Orr would have let Mr. Orr avoid being either charged or convicted of the disciplinary offense. Because this assertion is based on mere speculation, Mr. Orr can't proceed on this claim.

Ms. Boren saw Mr. Orr both weekly and monthly between November 6, 2017, and August 16, 2018. Mr. Orr submitted nine health care requests during this time. He provides the following as an example of what those requests included:

> [T]he panic and fear. I hate it. I hate everyone. I hate eating. I hate people who want to hurt me[.] I don't sleep for days at a time. I struggle with terrible nightmares when I do sleep. I relive several violent stabbings incident and violent acts against me by security staff, and I do not feel anything anymore. I can't slow my thoughts down.

ECF 14 at 7 (quotations omitted). He also complained about his time in segregation.

On June 6, 2018, Ms. Boren told Mr. Orr that, for him to move forward in his treatment and possibly be moved to a mental health unit, he needed to show progress. She indicated that she would provide an insomnia workbook, trauma worksheets, and a timeline. She asked him to complete them for his next session. Ms. Boren didn't refer Mr. Orr to Dr. Durak, Dr. Wala, or Dr. Eichmann to update his mental health diagnosis. Mr. Orr says she made make false entries into Mr.

5

Orr's electronic medical records, indicating that he had received cognitive behavioral therapy (CBT), including booklets, worksheets, and coping skills. Mr. Orr denies that he was ever prescribed CBT or coping skills by Ms. Boren. Mr. Orr further alleges that Ms. Boren didn't disclose or discuss an individual treatment plan with him and that she tried to cover up her misconduct by concealing Mr. Orr's EMR from him so that he couldn't complain about her misconduct.

Mr. Orr alleges that Ms. Boren included false information in the electronic medical records, but he doesn't explain how either the false information or the failure to discuss a treatment plan with him resulted in a constitutional violation. Mr. Orr doesn't dispute that he received booklets and worksheets – only that he didn't receive CBT and coping skills. It's unclear why Mr. Orr believes that he did not receive CBT. CBT is a type of talk therapy that "helps you become aware of inaccurate or negative thinking so you can view challenging situations more clearly and respond to them in a more effective way." https://www.mayoclinic.org/tests-procedures/cognitive-behavioral-therapy/about/pac-20384610 (last visited Apr. 27, 2021). Mr. Orr admits that he met with Ms. Boren both weekly and monthly. Mr. Orr hasn't plausibly alleged facts that support his assertion that Ms. Boren was deliberately indifferent to his needs when she didn't refer him to a provider so that his mental health diagnosis could be updated. Mr. Orr won't be granted leave to proceed on this claim.

Dr. Barbara Eichman suddenly stopped Mr. Orr's prescription for Effexor XR on April 16, 2019 because Mr. Orr was allegedly hoarding his medication and refusing to participate in a psychiatric appointment. He had been taking this

medication for four years, and he believes that, before stopping the medication, Dr. Eichman should have obtained a blood sample and tested it to determine if he was in fact not taking the medication. He further believes that Dr. Eichman should have slowly weaned him off the medication instead of stopping it abruptly. He suffered from headaches, "flashes in the head" and "electrical shocks in the head" because of the sudden withdraw of the medication. ECF 14 at 8. And, his suicidal and homicidal thoughts got worse. His sleep was disturbed. He had racing thoughts, extreme anger, and impulsive reactions. And, he believes that Ms. Boren should have advocated for him to be given the medication, because the correctional officers that reported that Mr. Orr would not attend his psychiatric appointment were lying. Instead, Ms. Boren and Dr. Eichman forced Mr. Orr to undergo psychotherapy without medication to treat anxiety and depression. These allegations don't support an inference that Dr. Eichman knew that the allegations of correctional staff were false or that she acted without medical judgment when she discontinued Mr. Orr's medication. Accordingly, he can't proceed against Dr. Eichman. Nor can he proceed against Ms. Boren on this claim, because "public employees are responsible for their own misdeeds but not for anyone else's." *See* Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). It was Dr. Eichman that decided to discontinue Mr. Orr's medication, not Ms. Boren. There is no basis for holding Ms. Boren liable for a decision that Dr. Eichman made.

7

Beginning on May 22, 2019, Mr. Orr saw Mr. Richard Usdowski both weekly and monthly. Mr. Orr submitted nine healthcare requests after May 22, 2019. In them he said things like:

> I'm not a hoarder of my medication. I'm doing bad. Real bad. Mostly I struggle with anger. When I become angry my thoughts take off so fast and I can't stop it. Custody staff conspires against my breathe. They want to get rid of me. They are persuaded to let me die. To weaken the resistance, that is to say, the violent prisoner. Me[.] Mental health say one thing in the flesh, then make something different in the records.

ECF 14 at 9 (quotations omitted). He also asserted that he needed a full mental health evaluation.

On October 29, 2019, responding to one of these requests, Mr. Usdowski indicated that Mr. Orr's mental health concerns had been addressed and that he wouldnt get to see Dr. Durak or Dr. Eichman again because he had already been seen. Mr. Usdowski didn't refer him to a provider for further mental health diagnosis. At some point, Mr. Usdowski allegedly told Mr. Orr that "[i]f you can file grievances and lawsuits, you did not need the assistance of psychotropic medication in segregation." *Id.* Mr. Usdowski also allegedly made false entries into Mr. Orr's electronic medical records, indicating that he was receiving CBT or coping skills. He didn't disclose any individual treatment plan. And, Mr. Orr says, he tried to cover his misconduct by concealing the electronic medical records so that Mr. Orr couldn't object to the false information. Mr. Orr's allegations regarding Mr. Usdowski are nearly identical to those brought against Ms. Boren. And, for the same reasons, they don't state a claim. There are no facts from which it can be plausibly inferred

8

that the care Mr. Orr received from Mr. Usdowski substantially deviated from accepted professional judgment.

Dr. Durak and Dr. Wala both allegedly knew that Mr. Orr had repeatedly reported homicidal and suicidal ideation, plans and attempts. Mr. Orr says he had repeated episodes of decompensation and a history of hunger strikes and disciplinary actions related to impulsive reactions. Mr. Orr alleges that Dr. Durak and Dr. Wala did nothing in response to that knowledge. Mr. Orr's allegations, however, are conclusory. Mr. Orr hasn't alleged specific facts from which it can be inferred that either Dr. Durak or Dr. Wala were deliberately indifferent to his mental health needs.

A team of mental health professionals (referred to by Mr. Orr as the "MDTT") discussed Mr. Orr's condition weekly. That team included Mr. Usdowski, Ms. Boren, Dr. Eichman, Dr. Wala, Dr. Durak, Warden Galipeau, Correctional Officer Smiley, Captain Lewis and Correctional Officer Salyer. This team repeatedly required Mr. Orr to sleep on a concrete floor and/or iron bed frames to "deter and intimidate him from feeling suicidal." ECF 14 at 10. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not

9

mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. Knight v. Wiseman, 590 F.3d 458, 463 (7th Cir. 2009); Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. Farmer v. Brennan, 511 U.S. at 834. Mr. Orr hasn't alleged facts from which it can be plausibly inferred that the deprivation of bedding was the result of deliberate indifference to his safety; rather, the defendants appeared to be acting with his safety in mind – to prevent him from engaging in self-harm. Therefore, these allegations do not state a claim upon which relief can be granted.

Mr. Orr further alleges that Commissioner Carter and Wexford of Indiana, a private company that provides medical care to inmates, deny mental health exams to inmates in WCU while disciplinary matters are pending to punish and prolong restrictive housing status, encourage the use of treatment known to be ineffective in treating anxiety, and encourage medical staff to falsify records, and to downplay and misdiagnose mental health conditions of inmates in segregation status to prolong restrictive housing and save money. Mr. Orr alleges that these policies resulted in his receipt of inadequate mental health care treatment. A private company may be held liable for constitutional violations when it performs a State function. West v. Atkins, 487 U.S. 42 (1988). A private company providing medical care in a prison performs a State function and can be held liable under the standard established in Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell*

10

framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005). Rather corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.*

"[A]dministrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." Roe v. Elyea, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis in original). The Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id.* (emphasis in original). Mr. Orr's complaint doesn't allege facts that plausibly suggest that either Wexford or Commissioner Carter has a policy of considering cost savings to the exclusion of reasonable medical judgment, so Mr. Orr can't proceed on his claim regarding cost savings. *See* Bissessur v. Indiana Univ. Bd. of Trs., 581 F.3d 599, 602 (7th Cir. 2009). Similarly, his complaint doesn't allege facts from which it can be plausibly inferred that Wexford or Commissioner Carter encourage the use of treatment known to be ineffective in treating anxiety. Mr. Orr's remaining allegations – that there are policies of denying mental health exams to inmates in WCU while disciplinary matters are pending and encouraging medical staff to downplay and misdiagnose mental health conditions of inmates in segregation status all to inappropriately prolong the inmates' stay in restrictive housing – also do not state a claim. Mr. Orr hasn't plausibly alleged facts from which it can be inferred that such policies exist. There are no facts from which it can be inferred that the medical staff

11

caring for Mr. Orr acted pursuant to policies of either Wexford or the Commissioner rather than their own personal decisions. *See* Roe v. Elyea, 631 F.3d at 863. Mr. Orr can't proceed against Wexford and Commissioner Carter.

Mr. Orr has named Warden Sevier as a defendant too, claiming he is legally responsible for others' actions. There is no general rule under 42 U.S.C. § 1983 that a supervisor is liable for what someone else does, and Warden Sevier can't be held liable simply because he oversees other defendants. *See* Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009). Mr. Orr can't proceed against Warden Sevier.

Mr. Orr also asserts state law claims for negligence and medical malpractice. Mr. Orr can't proceed on a state law claim for negligence because, if the defendants' actions were merely negligent, they would have been acting within the scope of their employment. "Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." Ball v. City of Indianapolis, 760 F.3d 636, 645 (7th Cir. 2014). Mr. Orr can't proceed on a state law claim for medical malpractice because he didn't first present the proposed complaint to the medical review panel and receive an opinion from the panel. See I.C. § 34-18-8-4; Terry v. Community Health Network, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014); Hines v. Elkhart Gen. Hosp., 603 F.2d 646, 647 (7th Cir. 1979).

Lastly, Mr. Orr's complaint contains a request for injunctive relief. Mr. Orr is only being granted leave to proceed against Correctional Officers Canzoneri and Early for their actions on October 23, 2017. No injunctive relief is available as to

12

this claim, because it involves a discrete incident, not an ongoing harm, and because Mr. Orr is no longer housed at the Westville Correctional Facility. ECF 15.

For these reasons, the court:

(1) GRANTS Michael Orr leave to proceed against Correctional Officer Canzoneri and Correctional Officer James Early for using excessive force against him without justification on October 23, 2017, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Michelle Boren, Dr. Barbara Eichman, Mark Sevier; Dr. Wala, Warden Galipeau, Correctional Officer Smiley, Captain Lewis, Correctional Officer Salyer, and Commissioner Carter, Gary Durak, Mr. Richard Usdowski, and Wexford of Indiana;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Correctional Officer Canzoneri and Correctional Officer James Early at the Indiana Department of Correction with a copy of this order and the complaint (ECF 14), pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant that does not waive service, if they have such information; and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Correctional Officer Canzoneri and Correctional Officer James Early respond, as provided for in the

13

Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 3, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT
